IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CARMEN LYNN OLIGNEY,

                Plaintiff,

v.                                                 OPINION and ORDER

MICHELLE KING,                                22-cv-491-wmc
Acting Commissioner of Social Security,

                Defendant.[1]

---

Plaintiff Carmen Lynn Oligney seeks judicial review of a final decision of the Commissioner of the Social Security Administration ("the Commissioner"), finding her not disabled within the meaning of the Social Security Act. Specifically, she contends that Administrative Law Judge ("ALJ") Roxanne J. Kelsey did not correctly determine her residual functioning capacity ("RFC") because she failed to adequately consider Oligney's obesity and provide proper support for reliance on medical consultants' opinions. For the reasons explained in this opinion, the court is unpersuaded by this argument and will affirm the Commissioner's decision.

---

[1] The court has amended the caption to reflect Michelle King's appointment as Acting Commissioner of Social Security.

BACKGROUND[2]

Oligney applied for supplemental security income in 2020, alleging disability beginning on July 2, 2020 due to a head injury, memory loss, eye deficits, anxiety, post-traumatic stress disorder, and arthritis.[3] (AR 264.) After Oligney's claim for benefits was denied by the local disability agency initially and on reconsideration, she requested a hearing that was held on March 1, 2022. (AR 37.) At this hearing, Oligney testified that she has severe pain and swelling in her knees and back and takes cortisone shots to help repair a meniscus tear. (AR 41.) She also testified that she takes care of her 19-year-old autistic son, who needs constant supervision. (AR 42.) Regarding her ability to complete everyday tasks, Oligney stated that she could drive, complete abbreviated grocery trips, do laundry, and walk short distances. (AR 42-43; 50-51.) The ALJ also heard testimony from vocational expert ("VE") Stuart Gilkison.

Using the evidence in the record and the testimonies from Oligney and the VE, the ALJ issued a written decision denying Oligney's request for benefits, following the five-step sequential evaluation process outlined in in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). First, the ALJ found that Oligney had not engaged in any substantial gainful activity since July 2, 2020. (AR 20.) Second, the ALJ determined that Oligney suffered from the following severe impairments: "degenerative joint disease of both knees, kidney

---

[2] The following facts are drawn from the administrative record, which can be found at dkt. #8.

[3] Because Oligney does not contend the ALJ's decision based on considerations of mental deficits, the court focuses its discussion on her physical impairments.

disease, obesity, fibromyalgia, medial epicondylitis, and post-traumatic stress disorder." (AR 17.)

At the third step, the ALJ found that Oligney did not suffer an impairment that met or medically equaled the severity of one of the conclusively disabling impairments listed in 20 C.F.R. § 401, subpt. P, app. 1. (AR 18.) Relevant here, the ALJ noted that she had considered "the claimant's obesity throughout this decision under the provisions of SSR 19-2p" but that the record did not contain evidence that "claimant's obesity alone, or in combination with another impairment, meets or medically equals a listing." *Id.* The ALJ also observed that Oligney could "weight-bear without an assistive device (EX B10F, 46; Ex B7F)" and that her care providers encouraged physical activity." *Id.*

At the fourth step, the ALJ crafted an RFC, finding that Oligney should be restricted to light work as defined in 20 C.F.R. 416.967(b), with restrictions on certain movements, including: kneeling, climbing ramps or stairs, balancing, stooping, reaching, or crawling. (AR 21.) In making this assessment, the ALJ relied on Oligney's testimony hearing, her submitted briefs, and the evidence contained in the medical record of several doctors' visits. The pertinent details of the ALJ's analysis will be addressed later in this opinion.

The ALJ also considered the opinions of stage agency consultants, Drs. Mina Khorshidi and Pat Chan, who reviewed Oligney's record in 2020 and 2021, respectively. (AR 26.) Both doctors determined that Oligney had the RFC to perform light work. *Id.* The ALJ found these opinions generally persuasive, since they were consistent with the record. *Id.* Supporting this conclusion, the ALJ cited the record, which "shows that [Oligney's] pain complaints, including in her knees and back, could be aggravated by lifting

3

and/or carrying more than 20 pounds occasionally and 10 pounds frequently." *Id.* The ALJ noted that the limitations included in the consultants' opinions (e.g., occasional kneeling, crawling, and crouching) took into consideration Oligney's back and knee pain, as well as the combined effects of her obesity. *Id*.

At the fifth and final step, the ALJ found that Oligney has no past relevant work experience but that she had at least a high school limitation. (AR 28.) VE Stuart Gilkison found that a hypothetical person with Oligney's limitations, could find work as a router, a mail clerk, or routing clerk. (AR 56-57.) Using this testimony, the ALJ determined that there are jobs that exist in significant numbers that Oligney can perform. (AR 30.) As such, the ALJ concluded that Oligney was not under a disability from July 2, 2020, through the date of the decision. *Id.*

ANALYSIS

The standard by which a federal court reviews a final decision by the Commissioner of Social Security is well-settled. Specifically, findings of fact are "conclusive," so long as they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Provided the Commissioner's findings under § 405(g) are supported by such "substantial evidence," therefore, this court cannot reconsider facts, re-weigh the evidence, decide questions of credibility, or otherwise substitute its own judgment for that of the ALJ. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). In articulating her reasoning, an ALJ must "buil[d] a 'logical bridge' between that substantial evidence and the ultimate

determination" *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014), by identifying "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019).

Oligney contends that the ALJ's RFC assessment was not based upon substantial evidence. Although her arguments are, at times, difficult to decipher, it seems they can be broken down into two chief complaints: 1) the ALJ failed to adequately consider Oligney's obesity in conjunction with her other severe impairments, particularly her knee pain and fibromyalgia; and 2) the state agency consultants did not consider the combined effects of Oligney's obesity and her bilateral knee pain, and, therefore, the ALJ's reliance on their opinions is suspect. Taking both criticisms in turn, the court will uphold the ALJ's decision for the reasons set forth below.

I. **Plaintiff's Obesity**

Social Security Ruling 19-2p, effective as of May 20, 2019, provides direction on how an ALJ must evaluate a claimant's obesity when making a disability determination. Obesity is considered a severe impairment if it, alone or combined with another impairment(s), "significantly limits" a claimant's ability to do basic work activities. Soc. Sec. Ruling, SSR 19-2p; Titles II & XVI: Evaluating Cases Involving Obesity, SSR 19-2p (S.S.A. May 20, 2019). Under these guidelines, obesity is not a listed impairment, but an ALJ must still "consider the limiting effects of obesity when assessing a person's RFC" and explain how she "reached [her] conclusion on whether obesity causes any limitations." *Id.*

Even if the ALJ does not include this explanation, remand is not required unless the claimant specifies "how [her] obesity further impair[s] [her] ability to work." *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004); *see also Brumbaugh v. Saul*, 850 F. App'x 973, 976 (7th Cir. 2021) (reiterating this stance). Merely speculating that obesity might make it more difficult to stand or walk is not enough. *Id.* If "the claimant herself is silent" about the specific limiting effects of her obesity, the Seventh Circuit has "repeatedly excused as harmless the failure of an ALJ to explicitly address the claimant's obesity as [the ruling] prescribes so long as the ALJ demonstrated that [she] reviewed the medical reports of the doctors familiar with the claimant's obesity." *Hernandez v. Astrue*, 277 F. App'x 617, 624 (7th Cir. 2008).

As the Commissioner correctly notes, Oligney did not allege obesity in her initial disability application, nor did she raise it as a concern during her testimony at the hearing. *See* AR 41 (Oligney identifying knee pain stemming from a meniscus tear as her chief physical limitation); and AR 334 (Oligney alleging head injury, memory loss, eye surgery, anxiety, post-traumatic stress disorder; and arthritis in her disability application). Nevertheless, during her hearing, Oligney testified that she weighed 330 pounds. (AR 50.) The medical community considers a BMI of 30 or over to be obese. SSR 19-2p. Her current weight (as of the hearing) would put her well over the Body Mass Index ("BMI") of 49.9 that her care providers noted in September 2020. (AR 520.) An ALJ presented with such an obvious record of obesity probably should address it to craft a well-rounded RFC. *See, e.g., Skarbek,* 390 F.3d at 504 (finding that references to obesity and weight in a patient's

6

record is likely sufficient to put an ALJ on notice that obesity is a potential severe impairment).

But the ALJ in the instant case *did* address Oligney's obesity. The ALJ found, in Step Two of her decision, that Oligney suffered from several severe impairments, including obesity. (AR 17.) In Step Three, the ALJ noted that she considered obesity in accordance with the SSR 19-2p guidelines but that Oligney's obesity, alone or in combination with her other impairments, was not enough to constitute a medical listing. (AR 18.) The ALJ also confirmed that she considered obesity throughout the entire opinion. *Id.*

Further, the ALJ considered and discussed obesity when crafting Oligney's RFC. The ALJ determined that Oligney's knee pain would not have been enough to limit her to sedentary work "even considering the claimant's degree of obesity (in the morbidly obese range and as high as 50+ per Ex B8F, 10)." (AR 25.) Supporting this conclusion, the ALJ noted that, although Oligney complained of knee pain, she performed well at a consultative examination and admitted to doing a lot of walking and shopping for her mother. (AR 25; 487.) The ALJ also noted that medical professionals had advised Oligney to engage in physical activity to control her weight and found that she should "avoid walking longer distances and avoid movements that exacerbate her symptoms (Ex B8F, 9)." (AR 25; 488.) Addressing the claimant's brief in which her representative argued for a limitation to sedentary work, the ALJ countered that the evidence cited to support this argument consisted of "mainly mild findings, including mild difficulty tandem walking (Ex B7F, 2), mild crepitus of the right knee (Ex B7F, 2; Ex B8F, 11), and a mildly antalgic gait (Ex B8F, 9, 11)." (AR 25; 473; 488-90.)

Even so, Oligney argues that obesity was not adequately contemplated because the ALJ did not consider it in conjunction with her knee pain and her fibromyalgia. As a preliminary matter, as the abovementioned discussion shows, the ALJ *did* draw a direct line between Oligney's knee pain and obesity but found that even the two combined did not merit a limitation to sedentary work. Oligney also argues that the ALJ's opinion only entertains obesity in the context of *lifting* as opposed to *walking* or *standing.* (Pl.'s Br. (dkt. #13) 15) (citing AR 26.)) But this is factually incorrect. The ALJ did make note of Oligney's mild antalgic gait and a physician's recommendation to avoid walking longer distances and movements that would exacerbate symptoms. (AR 25.) The ALJ also cited doctors' recommendations that Oligney participate in regular physical activity to keep her weight under control. (*See, e.g.,* AR 523 ("…regular physical activity was advised to bring weight down".))

In fairness to Oligney, the ALJ only mentions fibromyalgia twice: when listing Oligney's severe impairments; and when noting that a care provider found Oligney's symptoms consistent with a fibromyalgia diagnosis. (AR 17, 24.) But Oligney does not argue the sufficiency of the discussion of fibromyalgia itself – only that it was not considered in light of obesity. An ALJ need only consider and articulate whether obesity, working in combination with other impairments, is enough to merit a more restrictive RFC. SSR 19-2p. Nothing in the guidelines suggests that the ALJ must compare obesity against every single impairment to arrive at a holistic conclusion about the limiting effects of a claimant's obesity. And it is widely accepted that an ALJ has a low-threshold duty to "minimally articulate" her reasons for accepting or rejecting evidence of a disability. *Berger*

8

*v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008) (citing *Rice v. Barnhart*, 384, F.3d 363, 371 (7th Cir. 2004)).

More to the point, Oligney does not identify, with any specificity, how her obesity negatively impacts her knee pain and fibromyalgia in ways that inhibit her ability to work. In her brief, Oligney claims that her obesity limits her ability to walk and stand due to knee pain. (Pl.'s Br. (dkt. #13) 15.) But as mentioned above, the ALJ adequately dispensed with this argument by pointing out that Oligney's doctors had recommended physical activity (within ranges of motion that do not cause pain) to combat her weight. Oligney acknowledges that the ALJ "considered obesity in light of her knee pain" (Pl.'s Br. (dkt. #13) 11) but then later, in the same document, attempts to argue that the ALJ's "accommodation of [her] obesity was not connected to the record regarding her knees." *Id.* at 15.

With regard to fibromyalgia, Oligney also does little but guess at potential limitations by citing to general informational articles. One article suggests that obesity *may* be related to the severity of fibromyalgia symptoms. (*Id.* at 14.) The other submits that obesity is associated with an increased risk of fibromyalgia in women with low levels of physical activity. (*Id.*) Oligney uses both of these articles to maintain that "relatively minor physical symptoms *can* become more severe when combined with obesity." (*Id.*) (emphasis added). But mere speculation that obesity might make her other impairments worse is not enough to overcome the Seventh Circuit's presumption of harmless error, where the claimant is silent on the details.

**II. Reliance on State Agency Consultants' Opinions**

Under the newly revised regulations for evaluating medical evidence, an ALJ is not required to assign any particular amount of weight to the opinions of medical professionals. An ALJ must only assess each opinion for persuasiveness, based on its supportability and consistency with the evidence in the record as a whole. 20 C.F.R. § 404.1520c(b), (c)(1). This is not a high standard, and an ALJ need not articulate her assessment with exact detail or particularity. She must only enable the court to trace the path of her reasoning. *Clifford v. Apfel*, 227 F.3d 863, 874 (7th Cir. 2000).

As far as the court can tell, Oligney appears to argue that because both state agency consultants, Drs. Khorshidi and Chan, failed to consider her *bilateral* knee pain in conjunction with her obesity, the ALJ erred by relying on their opinions. This argument fails for two reasons. First, Dr. Khorshidi *did* consider Oligney's bilateral knee pain. In her RFC assessment, Dr. Khorshidi made the following notation: "Clmt alleged arthritis – after examiner consulted her she reported most limited by knee pain bilaterally. L knee xray obtained supports mod degen change in L knee. R knee xray found lateral tilting and translation of patella." (AR 118-19.) Although she does not make the link between obesity and knee pain explicit, she does mention that Oligney was morbidly obese. *Id.* A reasonable mind could determine that Dr. Khorshidi made her entire evaluation with Oligney's obesity in mind. Dr. Chan did not discuss Oligney's left knee in his assessment, but this court need not evaluate a medical opinion for its accuracy or completeness.

Second, the ALJ did not err by relying on these consultants' reports because she properly outlined her supportability and consistency assessment. The ALJ stated that she

10

found the reports "generally persuasive" becuase they were supported by "substantial evidence" from the record "as set forth above." (AR 26.) Perhaps Oligney wishes to argue that, because the ALJ did not put her discussion of the record in the same paragraph as her discussion of the consultants' reports, she did not address supportability and consistency with the record at all. But the fact is, the ALJ discussed extensive parts of the record in reaching the conclusion that Oligney's medically determinable impairments could be reasonably expected to cause the alleged symptoms, but that the limiting effects of these symptoms was not as severe as alleged. (AR 23-26.) As explained in the previous section, the ALJ cited Oligney's positive performance during consultative exams (AR 25; 487); only mild difficulty tandem walking (AR 25; 473; 488-90); and the recommendation of physical exercise (AR 25; 488.) These, along with references to several other sections of Oligney's medical records, more than minimally articulate the supportability and consistency of the consultants' opinions.

In sum, the ALJ adequately considered Oligney's obesity. She also properly assessed the consultants' opinions for supportability and consistency using substantial evidence from the record. Without a basis for reversal, therefore, the court must deny Oligney's motion for summary judgment and affirm the ALJ's decision.

ORDER

IT IS ORDERED that the decision of the Acting Commissioner of Social Security, is AFFIRMED, and plaintiff Carmen Lynn Oligney's motion for summary judgment (dkt. # 12) is DENIED The clerk of court is directed to enter judgment and close this case.

Entered February 6, 2025.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge